UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY BRUCE WARD,<br><br>               Petitioner,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>               Respondent. | Case No. 1:13-cv-00495-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Gary Ward's Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed November 19, 2013. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Commissioner with instructions.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 9, 2011, claiming disability beginning on December 2, 2006, due to back pain caused by thoracic fractures and degenerative disc disease, asthma, chronic obstructive

**MEMORANDUM DECISION AND ORDER - 1**

pulmonary disease, and upper and lower extremity tremors. This application was denied initially and on reconsideration, and a hearing was conductedon July 25, 2012, before Administrative Law Judge ("ALJ") John Molleur. After hearing testimony from Petitioner, vocational expert Beth Cunningham, and Petitioner's wife, ALJ Molleur issued a decision finding Petitioner not disabled on August 24, 2012. Petitioner timely requested review by the Appeals Council, which denied his request for review on October 10, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the July 2012 hearing, Petitioner was 47 years of age. Petitioner completed high school. Petitioner's prior work experience includes work as a medical sales representative and hospital equipment maintenance technician.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of December 2, 2006. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease, asthma, and chronic obstructive pulmonary disease severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering the listings for disorders of the musculoskeletal system (1.00) and respiratory system (3.00). If a claimant's impairments do not meet or equal a listing,

**MEMORANDUM DECISION AND ORDER - 2**

the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform his past relevant work as an inventory clerk or medical sales representative. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

The ALJ determined Petitioner retained the RFC to perform a reduced range of sedentary work. The ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, he can lift/carry 10 pounds, stand/walk for 2 hours and sit for 6 hours in an 8-hour workday. He is able to balance, bend, stoop, kneel, crouch and crawl on an occasional basis. He can climb stairs and ramps occasionally. The claimant must avoid exposure to dust, fumes, gases, noxious irritants and extreme humidity and heat.

(AR 13.) Given the above limitations, the ALJ concluded Petitioner would be able to perform the requirements of representative occupations such as order clerk, charge account clerk, and document preparer.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable

**MEMORANDUM DECISION AND ORDER - 3**

physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision,

because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner challenges the ALJ's conclusion at step four when determining his RFC. Specifically, Petitioner contends the ALJ erred by (1) rejecting Petitioner's testimony and by failing to provide clear and convincing reasons for finding Petitioner not fully credible; (2) failing to consider the cumulative effect of all of Petitioner's medical impairments; and (3) rejecting the opinions of treating provider Daniel Marsh, M.D., and consultative examiner Mark Harris, M.D. The Court will examine the first two issues in the context of Petitioner's credibility, and then turn its analysis to the ALJ's treatment of the physician opinions.

1.   **Credibility**

Ward argues that the ALJ erred in discrediting his testimony. Ward testified that his impairments include thoracic pain, tremors, and the frequent need to rest due to pain. Activity exacerbates his condition, but when he is able to rest in his recliner, the pain subsides. He uses an armchair because he needs something to put his arms on to hold him up due to thoracic fractures and resulting kyphosis. Ward plans out his activities around rest. Sometimes, Ward sits at the

**MEMORANDUM DECISION AND ORDER - 5**

dining room table to read a magazine or a book, and he is able to check e-mail on his computer. It generally takes him an entire day to do the laundry, he is able to load the dishwasher while sitting, and he can sit in his recliner in the kitchen and help his wife chop vegetables for dinner, albeit slowly.

Ward has not done yard work for several years, and he is able to vacuum one area rug once a week. He is no longer able to walk down to the basement, so his son helps him with the water softener located in the basement. Ward is able to shop at the grocery store, but he leans on the cart and is unable to buy enough groceries for a whole week. Instead, he takes a short trip to the store once a day. The tremors occur in his hands, and have become progressively worse over time. When he completed the disability questionnaire, his handwriting was not entirely legible and it took him most of a day to complete it because of his hand tremor. (AR 46, 257-265.)

The ALJ concluded that Ward's statements "concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and provided a discussion of the evidence supporting that conclusion.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). But, to discredit a claimant's testimony when a medical impairment has been established, the ALJ's findings must be supported by specific, cogent reasons for the disbelief. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). General findings are insufficient; the ALJ must identify what testimony is not credible

**MEMORANDUM DECISION AND ORDER - 6**

and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, the ALJ gave several reasons for rejecting Ward's testimony. First, the ALJ rejected Ward's testimony because Ward described daily activities that are not limited to the extent one would expect given his complaints of disabling symptoms and limitations. The ALJ cited that Ward takes care of his house with time to rest, cares for his cat, prepares meals, and goes shopping. The ALJ questioned also Ward's fine motor manipulation skills, because he was able to sit in the kitchen and slice and dice food. But the mere fact a claimant has carried on

**MEMORANDUM DECISION AND ORDER - 7**

certain daily activities "does not in any way detract from [his] credibility as to [his] overall disability." *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Here, however, there is neither evidence to support that Ward's activities are transferrable to a work setting nor proof that Ward spent a substantial part of his day engaged in transferable skills. Further, there is no indication that the ALJ took into consideration the effect of Ward's tremors, which were clearly documented by his treating physician Dr. Marsh, and the consultative examiner, Dr. Harris, as well as evidenced by Ward's own handwriting in the record. The Court concludes, therefore, that the ALJ failed to make sufficient findings, as more fully explained below.

First, Ward's activities are so punctuated by rest that they cannot be said to bear a meaningful relationship to the activities and demands of the workplace. The ALJ's rationale for discrediting Ward's testimony about the extent of his limitations was that Ward's abilities "provide support for the RFC conclusion." This rational is insufficient. The ALJ may not support his credibility determination by referring to the RFC conclusion. Additionally, the ALJ supported his adverse credibility finding by indicating the record supports the inference that "treatment has been generally successful in controlling" his pain symptoms, because Ward obtained improvement from pain block injections. However, the record contains no evidence of

**MEMORANDUM DECISION AND ORDER - 8**

conservative treatment that alleviates Ward's pain on a daily, long-term basis. Rather, Dr. Marsh indicated on May 3, 2010, that Ward's pain is controlled by structuring his activities to minimize pain symptoms. (AR 277.)

Only one pain block procedure, performed on May 20, 2010, is noted in the record. Dr. Marsh indicated that the pain would return and repeat injections would be required, or an ablation would be necessary to cauterize the nerves. (AR 274.) Ward testified he was reluctant to proceed with ablation because of the 50/50 success rate. (AR 52.) Thus, while Ward did receive temporary improvement from pain block injections, the ALJ failed to consider the long term outcome. There was substantial evidence in the record indicating the relief provided by pain block injections was temporary, and the pain would return. There was no assessment by the ALJ as to how the pain block injections would control Ward's pain on a daily, sustained basis to allow him to work full-time. Thus, the ALJ's credibility determination as to the limiting effects of Ward's pain, and the ability to control it with fairly invasive treatment, is not supported by substantial evidence.

Second, the fact that Ward can, and does, engage in occasional chopping and dicing of food in the kitchen bears no relationship to the work activities he would be required to perform for the jobs the ALJ identified. The vocational expert testified that the job of charge account clerk would require data entry and the ability to use a computer frequently throughout the day, while the job of order clerk would require frequent handwriting. (AR 64-66.) The job of document preparer also would require keyboarding and handwriting to some degree. The ALJ did not explain how a few minutes of slowly chopping and dicing while sitting in a recliner discredited Ward's documented inability to write quickly or legibly, or to use a keyboard throughout the day in a work setting. Rather, it appears the ALJ discredited the effect of Ward's

**MEMORANDUM DECISION AND ORDER - 9**

tremors entirely, because no provision was made for consideration of the effect of the tremors in the ALJ's RFC analysis. The ALJ's conclusion that, because Ward sometimes helps his wife chop and dice during meal preparation, he therefore has transferrable skills, is in error. The jobs of order clerk, charge account clerk, or document preparer all require handwriting and keyboarding. The ALJ erroneously disregarded the evidence of handwriting and keyboarding requirements. The ALJ's credibility determination is therefore not supported by substantial evidence, and the RFC analysis is in error because it did not include all of Ward's limitations in relation to the fine motor skills required for the representative jobs identified as available for him.[1]

## 2. Physician Testimony

The United States Court of Appeals for the Ninth Circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in

---

[1] The ALJ made short shrift of Ward's tremors, ignoring their potential limiting effects entirely because "one would expect that an individual that is limited by hand tremors would not risk self-injury by utilizing sharp knives." (AR 15.) But, there was substantial discussion of the effect of the tremors during the hearing, and Ward's attorney posed several questions to the vocational expert about the vocational effect of the tremors Ward experienced.

**MEMORANDUM DECISION AND ORDER - 10**

the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ may also reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ gave little weight to either medical opinion rendered by treating physician Dr. Marsh, or consultative examiner Dr. Harris. In the present case, treating source Daniel Marsh, MD, completed a physical RFC assessment dated July 15, 2011. (AR 360-367). Dr. Marsh concluded that the Petitioner had the following limitations:

1. Occasionally lift and/or carry less than ten pounds;
2. Frequently lift and/or carry less than ten pounds;
3. Stand and/or walk for a total of less than two hours in an eight our work day;
4. Sit for a total of less than about six hours in an eight hour work day; and
5. Limited pushing and/or pulling in the upper and lower extremities.

(AR 360-361). Dr. Marsh indicated these limitations were due to the Petitioner's severe thoracic

**MEMORANDUM DECISION AND ORDER - 11**

pain. (AR 361).

Dr. Marsh further indicated that the Petitioner was to never perform the following postural limitations: climbing, balancing, stooping, kneeling, crouching and crawling. (AR 362). With respect to manipulative limitations, Dr. Marsh opined that the Petitioner was limited in reaching in all directions, handling (gross manipulation), fingering (fine manipulation) and was not limited with feeling (skin receptors). (AR 363). Dr. Marsh indicated that handling and reaching caused thoracic pain for the Petitioner. *Id*. Finally, Dr. Marsh commented that the Petitioner's thoracic pain is due to the degenerative condition in his spine and it is a severe and permanent condition. (AR 365). Upon reviewing Dr. Marsh's RFC, the vocational expert was of the opinion that such an RFC would preclude full-time work because it indicated less than sedentary work capabilities due to the limitations upon standing, walking or sitting, and lifting less than ten pounds. (AR 66.)

Dr. Harris's consultative examination report states that the Petitioner had the following functional limitations:

1. Limitations in walking greater than 15 minutes at a time without rest break .
2. No limitations with sitting other than change of position as needed.
3. Limitations with standing for more than 15 minutes at a time with frequent rest breaks.
4. No limitations with lifting, carrying, handling objects, hearing speaking or traveling.
5. Limitations with use of the arms above the shoulder level to only occasionally. Otherwise no limitations with use of the upper limbs.
6. No limitations with the use of his lower limbs.
7. No limitations with the use of the spine.
8. Change position as needed.
9. No unprotected heights.
10. Do not operate machinery.

(Tr. 347-348). Dr. Marsh reported normal findings in cervical, shoulder, hip, lumbar, knee, elbow, forearm, ankle, wrist, and thumb range of motion, although there was decreased extension

**MEMORANDUM DECISION AND ORDER - 12**

of Ward's cervical range of motion. Dr. Marsh noted Ward's tremor in bilateral upper and lower limbs throughout, but documented a normal, non-antalgic gait.

Here, Dr. Marsh, like Dr. Harris, performed a physical examination, and both are in agreement with the diagnosis, arrived at after studying Ward's MRI images, examining Ward, and listening to Ward's patient history. Accordingly, both doctors arrived at the same findings. It is only their conclusions from those findings that differed. *Orn*, 495 F.3d at 634 (differentiating between a doctor's findings versus the conclusions drawn from those findings). While Dr. Marsh believed Ward was more limited with postural activities and reaching, Dr. Harris concluded there was no limitation with the use of upper limbs below shoulder level, lower limbs, or spine. It should be noted, however, that on the day Dr. Harris examined Ward, he reported his pain to be "3 out of 10, best is 3 out of 10, worst is 10 out of 10." (AR 344.) Dr. Harris examined Ward on a relatively pain free day, whereas Dr. Marsh, who had more opportunities to observe Ward due to the treating relationship over time, had occasion to examine Ward on days when he was experiencing more pain. (*See* AR 277, reporting pain at 8 out of 10).

The ALJ rejected both physician opinions. He concluded Dr. Marsh's statement should be given "little weight" because "it does not appear to reflect an unfettered opinion. The doctor relied on the subjective reports of symptoms and limitations provided by the claimant, to [sic] and seemed accept as true most, if not all, of what the claimant reported." However, Dr. Marsh did not believe Ward was malingering. Further, as explained above, the Court concluded the ALJ's credibility analysis was in error and not based upon substantial evidence or the record as a whole. Thus, it was error for the ALJ to reject Dr. Marsh's opinion on the basis of the ALJ's erroneous credibility finding.

The ALJ provided a second reason for rejecting Dr. Marsh's opinion, reasoning that Dr.

**MEMORANDUM DECISION AND ORDER - 13**

Marsh's opinion was inconsistent with the doctor's own clinical findings. However, the ALJ did not specify what clinical findings he found inconsistent. And, although Respondent now argues that the ALJ discussed elsewhere in the record that Dr. Marsh's physical examination revealed a non-antalgic gait, good balance, and negative straight leg raise to be the inconsistent findings, general findings made by the ALJ when rejecting the treating physician's opinion are insufficient. Instead, the ALJ must specifically identify the evidence that undermines the opinion of the treating physician. *Burrell v. Colvin*, No. 12-16673, slip. op. at 10 (9th Cir. Dec. 31, 2014).

Here, the ALJ failed to consider the relatively aggressive treatment regimen Dr. Marsh recommended. Dr. Marsh was not treating Ward's pain conservatively. Rather, because conservative pain management was not working, Dr. Marsh prescribed injection therapy, which provided temporary relief, and believed Ward was a candidate for radiofrequency ablation. (AR 274.) Additionally, although both Dr. Marsh and Dr. Harris described a non-antalgic gait, the area of pain was in Ward's thoracic region, at the site of three broken vertebrae located at T8, T9, and T10, and throughout the region of the resulting kyphosis. Neither physician was of the opinion that Ward was unable to walk because of gait problems. Thus, the ALJ's statement that Dr. Marsh's clinical findings were inconsistent with the doctor's own opinion does not warrant the rejection of his opinion.

Dr. Marsh did not claim that Ward's limitations with respect to walking were caused by his gait or inability to balance, but rather because his thoracic pain and kyphosis limited his ability to tolerate long periods of sitting or walking, and thus limited his ability to work. Thus, the medical records appear consistent with Dr. Marsh's opinion, and not inconsistent with his clinical findings. The two reasons provided by the ALJ for rejecting the opinion of Dr. Marsh are insufficient; they simply are not "specific, legitimate reasons supported by substantial evidence

**MEMORANDUM DECISION AND ORDER - 14**

in the record," because the substantial evidence in the record contradicts them.[2]

The same is true of the ALJ's assessment of Dr. Harris's opinion. The ALJ rejected Dr. Harris's opinion that Ward could only stand/walk for 15 minutes at a time as "completely inconsistent with his own examination." (AR 16.) Again, although the ALJ discussed Dr. Harris's examination findings earlier in the analysis, the ALJ did not elaborate on which portions of the medical examination findings conflicted with Dr. Harris's opinions regarding Ward's ability to stand and walk. Even if the Court presumes the ALJ is relying upon Dr. Harris's finding that Ward could perform a full squat, tandem walk, dress and undress himself, walked with a non-antalgic gait, and had no limitations (other than cervical flexion) with his range of motion, the ALJ did not comment on the fact that Dr. Harris examined Ward on a relatively pain free day. The ALJ apparently overlooked this fact when assessing whether Dr. Harris's opinion conflicted with his clinical findings upon examination. There is, however, substantial support in the medical records that Ward reported his pain as worse to Dr. Marsh than reported to Dr. Harris on the one occasion. Further, there is evidence in the record that Ward was receiving aggressive pain management therapy for that pain. Accordingly, the reason given for rejecting Dr. Harris's opinion was not a specific, legitimate reason supported by substantial evidence in the record.

## CONCLUSION

The ALJ's reasons for disregarding the opinions of Ward's treating and consultative physicians and for disregarding Ward's testimony are legally insufficient. However, there remain

---

[2] Petitioner argues that the clear and convincing standard should apply, because Dr. Marsh's opinion is not contradicted by Dr. Harris's opinion. However, the Court finds the conflict between which standard to apply is not material to the determination, because even under the "specific and legitimate" standard, there is not substantial evidence in the record to support the rationale for rejecting Dr. Marsh's opinion.

**MEMORANDUM DECISION AND ORDER - 15**

issues in the record that should be decided by the agency, given the limited evidence in the record about Ward's ability to hand write and keyboard, and the nature of Ward's pain, which is localized in his thoracic region. Although Ward's pain does not appear to affect his underlying ability to walk, it does appear to limit the length of time for walking and sitting, thereby precluding sedentary work. The Court will remand to the agency for further proceedings.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **January 06, 2015**

Honorable Candy W. Dale
United States Magistrate Judge